WIGHT and others *v.* DUBOIS and others.

*(Circuit Court, D. Colorado.*   October 8, 1884.)

1. MINERAL LANDS—TITLE—RELATION OF CLAIMANTS.

   The government, as a land-owner, offers its mineral lands for sale upon certain prescribed conditions, compliance with which is a matter of settlement between the owner and purchaser alone, and with which no stranger to the title can interfere.

2. SAME—ADVERSE CLAIMS—PUBLICATION OF NOTICE.

   Publication of notice is process bringing all adverse claimants into court, and if no adverse claims are presented it is conclusively presumed that none exist, and that no third parties have any rights or equities in the land.

3. SAME—PROTEST—CONTEST BEFORE LAND-OFFICE.

   After publication of notice, the only right or privilege remaining to any third parties is that of protest or objection filed with the land department, and cognizable only there. If sustained by the department, the proceedings had by applicant are set aside; if overruled, the protestor or objector is without further remedy.

In Equity.   Petition for rehearing.

*A. W. Rucker* and *H. B. Johnson,* for complainants.

*L. C. Rockwell* and *J. B. Bissell,* for defendants.

BREWER, J.   This case comes before me on a petition for rehearing on an order of Judge HALLETT, denying an injunction.   The defendants have a patent, and therefore hold the legal title.   It is beyond question that, as a matter of fact, they discovered mineral within the limits of their location.   It is also beyond question that they complied with all the preliminary steps for obtaining a patent, including the 60 days' publication of notice, and that no adverse claim was filed by the complainants or their grantors during the pendency of such publication.   It also appears that after the publication of notice had been completed the complainants challenged before the local land-office, as well as before the department at Washington, the right of the defendant to a patent.   That contest was protracted. Many hearings were had before the local land-office as well as at Washington, and as the result thereof the title of the defendants was sustained and the patent issued.   Question is made as to whether the defendants discovered mineral in their discovery shaft, and also whether complainants had discovered mineral prior to the publication of the notice.

Now, some general propositions may well be stated: *First,* the government, as the original owner, offers the title to these mineral lands upon certain conditions to whomsoever discovers mineral.   The amount of land it will convey to each locator is limited, and certain forms of procedure are prescribed, but the primal fact is that the lands are offered to those who discover the mineral.   In this matter the government resembles a private land-owner who makes an offer to sell his lands upon specified conditions.   When the patent issues the title passes from the government, and no one can question that title who has not prior thereto, by compliance with the conditions

prescribed by the government, himself acquired an interest in the land. It matters not what wrong the patentee may have perpetrated upon the government; it, and it alone, can complain. In other words, when grantor and grantee are satisfied, a stranger has nothing to say. In *Smelting Co.* v. *Kent*, 104 U. S. 647, speaking of this question, the court says:

"This complainant cannot be heard unless he connect himself with the original source of title, so as to be able to aver that his rights are injuriously affected by the existence of the patent, and he must possess such equities as will control the legal title in the patentee's hands. *Boggs* v. *Mining Co.* 14 Cal. 279. It does not lie in the mouth of a stranger to the title to complain of the act of the government with respect to it. If the government is dissatisfied, it can, on its own account, authorize proceedings to vacate the patent or limit its operation."

So, whether or not it is essential, under the state law, that there be a discovery of mineral in the discovery shaft, no one can raise that question after the issue of the patent, unless he have prior equities in the land. Indeed, as the primal fact is the discovery of mineral, I do not see how the government can avoid its patent on the ground that there was no mineral discovered in the discovery shaft, provided it was, in fact, discovered within the location; and this, notwithstanding it may be conceded that the state law is operative, and requires a discovery in the discovery shaft. This, like the time of publication of notice, the filing of the plat, etc., is mere matter of procedure, and, if the substantive fact of the discovery of mineral exists, I do not see how the government, for any irregularities or defects of procedure, can equitably avoid its patent.

Again, it is, as stated, conceded that no adverse claim was filed by the complainants, and I think it follows therefrom that judgment has gone against them as to all claims which they may have had or supposed they had. The language of the statute is somewhat peculiar, and its peculiarities were commented upon by Judge HALLETT in the opinion filed. It reads:

"If no adverse claim shall have been filed with the register and the receiver of the proper land-office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent upon the payment to the proper officer of $5 per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter." Section 2325, Rev. St.

"It shall be assumed that no adverse claim exists." By whom assumed, for what purpose, and to what extent? By the government, the owner of the land, the party offering it for sale; in order that the claims of all other parties to the land and the benefit of the owner's offer be presented and determined, and that thereafter the government may deal with the applicant alone, inquiring simply whether he has performed the prescribed conditions; and conclusively assumed. The proceedings before the land department are ju-

dicial, or *quasi* judicial, at least. The publication is process. It brings all adverse claimants into court, and, failing to assert their claims, they stand, at the expiration of the notice, in default. True, no adverse claimant or supposed claimant may be named in the notice; no process may be served personally upon him; but that does not avoid the notice, or weaken its sufficiency to bring such party into court. This is not the only case known to the law in which parties not named in a notice are by it brought into court and their rights adjudicated. Unknown heirs are often thus brought in by a published notice. Tax proceedings, condemnations of rights of way, admiralty cases, and many others present familiar illustrations. The sufficiency of the notice in these cases is unquestioned, even though the adverse claimant be not named, and no personal service be had. And if the parties be brought in, obviously it is that their claims be presented and determined. The succeeding section provides how such claims, if presented, shall be determined. Even without such section the purpose would be apparent. It would be grievous wrong to leave disputed claims unsettled, and when the owner of lands making such general offer prescribes time, place, tribunal, and manner of settling adverse claims, such provisions are a part and condition of the offer, and should be vigorously insisted upon by the courts.

Conclusively assumed, any other rule would destroy the practical value of the provisions. If, notwithstanding his failure to adverse, a party may still present and litigate his rights, of what use to adverse? A failure to do so might give his adversary the advantage of a *prima facie* title, but the real question, the absolute rights, would remain undetermined. The applicant would hesitate to improve and develop his property because ignorant of what contests were before him, what claims might be presented. And the contestant might wait till the evidence in favor of the applicant's right had ceased to exist, or passed beyond his control, and then unexpectedly come forward with his claims. I do not mean that cases may not arise in which equity will interfere thereafter, if there be equitable grounds for interference, as where, by the acts of the applicants, those who might have adversed have been prevented, deceived, or misled; but unless such equitable reasons exist, and none such appear in this case, he who fails to adverse until the expiration of publication is absolutely cut off, and cannot be heard to say that he has prior rights.

Judge HALLETT, in his opinion, finds that these complainants were in a position to adverse at the time of this publication. Notwithstanding the averments of the last bill and the affidavit of Mr. Wight, I think the general scope of the testimony sustains that finding. But it is said by counsel that, under the last clause of the statute quoted, any person may object that the applicant has failed to comply with the terms of the chapter; and why should they not have the same privilege as strangers? Have they forfeited this right by failing to

adverse? It becomes necessary to see what rights this last clause gives. I think all that it covers is the right to anybody to come in and enter his protest or objection; in other words, to say to the offi-. cers of the government that the applicant has not complied with the terms of the statute, and to insist that there shall be an examination by such officers to see if the terms have in fact been complied with. He does not appear as a party asserting his own rights; but if we may, so to speak, parallel these proceedings with those in a court, such an objector appears as an *amicus curiæ,*—a friend of the court, —to suggest that there has been error, and that the proceedings be stayed until further examination can be had. Such a protest does not bring the protestant into court for the assertion of his own title or rights; does not revivify rights lost by a failure to adverse. True, if the protest or objection is sustained, the proceedings will be set aside, new ones must be commenced, and then the objector may be in a position to assert his rights; but if the protest or objection be not sustained, the objector, like an *amicus curiæ,* has nothing more to say in the matter. In other words, the right to protest is not the right to contest. The latter is lost by the failure to adverse. The former remains open to every one, holders of adverse claims as well as others. But the protest is only to the officers of the government, challenges only the applicant's claims, and in no manner brings up for consideration any claims of the protestant. Such a protest can be made only before the land department, and, if there rejected, the protestant has no further standing to be heard anywhere. The protest cannot be made the basis of any litigation in the courts, for the courts are only open to those who have rights to assert; they sit for the determination of controversies. They do not, at the instance of strangers, review the regularity of proceedings between parties who are competent to determine such regularity, and who do not themselves invite any judicial determination.

These in brief are my views, and, without pursuing the discussion further, I sum up these propositions: *First,* the government, as a land-owner, offers its lands for sale upon certain prescribed conditions, compliance with which is a matter of settlement between the owner and purchaser alone, and with which no stranger to the title can interfere; *second,* publication of notice is process bringing all adverse claimants into court, and if no adverse claims are presented it is conclusively presumed that none exist, and that no third parties have any rights or equities in the land; *third,* thereafter the only right or privilege remaining to any third parties is that of protest or objection filed with the land department, and cognizable only there; if sustained by the department, the proceedings had by the applicant are set aside; if overruled, the protestant or objector is without further right or remedy.

Entertaining these views, I think the petition for rehearing must be denied.