NEILSON v. CHAMPAIGNE MIN. & MILL. CO. et al.

(Circuit Court, D. Colorado. November 15, 1901.)

No. 4,108.

MINING CLAIMS—EFFECT OF ENTRY—RELOCATION.

   After entry of a mining claim in the land office, a re-location of the premises cannot be made by another so long as that entry stands; and such a relocator acquires no rights, of possession or otherwise, which will sustain a suit by him in the courts to compel a conveyance to him of the legal title.

In Equity. On demurrer to bill.

Darwin T. Mason, for complainant.

A. T. Gunnell, for respondents.

HALLETT, District Judge (orally). This is a bill to enforce the conveyance of certain mining claims in the Cripple Creek district. The bill charges that in April, 1896, the Champaigne Mining & Milling Company owned the property in controversy, and then made application for patent; that the sum of $500 had not been expended on each of the claims, and only $1,630 had been expended on all of them, towards the improvement of them; that the annual work was not

done upon the claims in the years 1897 or 1898 or 1899; and that only $27 was expended upon them in the way of annual work in any of those years. Nevertheless the Champaigne Company proceeded to patent or to make entry for the claims on February 18, 1899. On that date they got a land office receipt for the claims, but in order to obtain this receipt they made false proof as to the amount of work done upon the claims, and therefore were not entitled to make entry as they did. Afterwards, and on May 1, 1899, the plaintiff entered upon the claims and relocated them. The manner of location and the amount of work done are set out in the bill. After he made the location, and in June, 1899, he filed a protest in the land office against the issuance of any patent to the Champaigne Company. This protest was twice amended afterwards. It was brought before the commissioner of the general land office, who overruled it, and afterwards before the secretary of the interior, who affirmed the decision of the commissioner of the general land office. The substance of the bill is that the respondent the Champaigne Mining & Milling Company made entry of the four claims upon false proof, and afterwards (the entry being in the month of February, 1899) the plaintiff entered upon the claims and relocated them May 1, 1899. The bill proceeds upon the hypothesis that the complainant had the right to relocate the claims after the entry in the land office, and that the decision of the commissioner of the general land office and of the secretary of the interior upon the various points raised by him as to the insufficiency of proof made at the time of entering the claims in the land office was an error of law, which may be reviewed in the courts, and he may have the title given to the Champaigne Company transferred to himself, as the person rightfully entitled to the claims. There is a demurrer to the bill which challenges its sufficiency.

The subject has been considered by the supreme court in the case of Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., reported in 145 U. S., at page 428, 12 Sup. Ct. 877, 36 L. Ed. 762. In that case the property in controversy was relocated after an entry in the land office by James C. Luttrel, who was well known in Colorado, though the case arose in Arizona. The ground upon which Mr. Luttrel proceeded was that annual work had not been done upon the claims after the entry in the land office, and up to the time the patent was issued for the claim. The court states the proposition in this way:

"Upon these facts appellant claims that although the mine was fully paid for by the locators in 1879, and a certificate of purchase received, inasmuch as the patent did not issue until January 10, 1884, and because the plaintiff failed to do a hundred dollars worth of work in the year 1882, its rights ceased, and the relocation by Luttrel was valid and vested in him the property."

The court then proceeds to consider the question with reference to the law and the decisions of the supreme court and of the land department upon that question, and arrives at the conclusion that annual work was not required after the entry in the land office, and this upon the ground that the government parted with the property upon that entry, although the title remained in the government until the

patent was in fact issued. After some consideration of the question and discussion of the statute, the court says:

"In other words, when the price is paid the right to a patent immediately arises. If not issued at once, it is because the magnitude of the business in the land department causes delay. But such delay in the mere administration of affairs does not diminish the rights flowing from the purchase, or cast any additional burdens on the purchaser, or expose him to the assaults of third parties."

And further on, after discussion:

"There is no conflict in the rulings of this court upon the question. With one voice they affirm that when the right to a patent exists the full equitable title has passed to the purchaser, with all the benefits, immunities, and burdens of ownership, and that no third party can acquire from the government interests as against him. The decision of the trial court was correct. The attempted relocation by Luttrel was void, and gave him no rights of possession or otherwise."

This case decides the whole question presented in this bill, which is that after entry in the land office a relocation of the premises cannot be made so long as that entry stands. The only remedy for the parties is to induce the government to proceed towards setting aside the entry. In that respect complainant in this suit sought to have the entry set aside in the land office, and was overruled, but the ruling of the land office in that particular is not subject to review in this court.

The bill of complaint states no case, and it will be dismissed.