NEILSON v. CHAMPAGNE MINING & MILLING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 10, 1902.)

No. 1,780.

1. MINING CLAIMS—EFFECT OF ENTRY—CONCLUSIVENESS AS TO THIRD PARTIES.

A stranger cannot acquire any rights in a mining claim after the application of another for a patent therefor has been allowed, and he has paid for and received a certificate of entry, which vests in him the equitable title as against third parties.

2. SAME—EFFECT OF PROTEST.

A protest filed against the issuance of a patent to a mining claim after the application for the patent has been allowed, the purchase money paid, and a certificate of entry issued does not give the protestant any basis for a suit in equity to annul the patent issued after the protest has been dismissed, or to charge the patentee as a trustee of the legal title.

Appeal from the Circuit Court of the United States for the District of Colorado.

Norman T. Mason and Darwin T. Mason, for appellant.

A. T. Gunnell, W. T. Miller, and W. J. Chinn, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. The bill in this case seeks to have it decreed that the defendant company holds the legal title to certain lode mining claims in trust for the plaintiff, and prays that it may be required to convey the same to the plaintiff. The theory of the bill is that the plaintiff has the equitable title to certain lode mining claims, which, after due and regular proceedings had for that purpose, were entered and paid for, and afterwards patented to defendant company. The circuit court sustained a demurrer to the bill (111 Fed. 655), and the plaintiff appealed.

The material facts disclosed by the bill essential to be considered in deciding the case are: That the defendant company, the Champagne Mining & Milling Company, in April, 1896, was the owner of four lode mining claims, known as Deadwood No. 1, Deadwood No.

2, Deadwood No. 3, and Deadwood No. 4, and on the 25th day of April of that year filed its application for a patent for the same, and published and posted the notice of such application required by law. To this application for a patent adverse claims and protests were filed, but neither an adverse nor protest was at that time filed by the plaintiff in this suit or any one by or under whom he claims. The several adverse claims and protests prevented the defendant company's application for a patent being passed to entry until the 18th day of February, 1899, when the defendant company was adjudged to have the right to enter the mining claims under its application for a patent, and thereupon on that day it paid the receiver of the proper land office the purchase money for the same, and received the usual receiver's certificate of entry therefor, being mineral entry No. 1,957, upon which a patent was afterwards duly issued and delivered to the defendant company.

The averments of the bill upon which the plaintiff relies to sustain his contention that the defendant company holds the legal title thus acquired to these lode mining claims in trust for the plaintiff, to whom it should be required to convey them, are: That on May 1, 1899, the plaintiff discovered lodes or veins in rock bearing gold on these several lode mining claims, and that he sunk discovery shafts and did all other things essential to the valid location of lode mining claims under the law; and that on June 9, 1899, he filed in the proper land office his "protest" against the issuance of a patent to the defendant company under its entry, and on June 16, 1899, an additional protest, and on June 29, 1899, an amended protest. These several protests alleged, in substance, that the defendant company had, prior to its entry of these mining claims, to wit, during the years 1897 and 1898, failed to make the annual expenditure of $100 in labor or improvements thereon required by section 2324 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1426], and had also failed to expend thereon $2,000 in labor and improvements prior to the date of the defendant company's entry. These protests, with the accompanying affidavits, were by the local land officers transmitted to the commissioner of the general land office, by whom they were dismissed, and, on appeal to the secretary of the interior, this ruling was, on February 12, 1900, affirmed, in a very clear and satisfactory opinion, made part of the plaintiff's bill.

The plaintiff did not adverse the defendant company's application for a patent, and did not file his protest against the issuance of a patent, until after the defendant company, at the end of a long litigation in the land department with others, had been adjudged to be the rightful owner of the mining claims, and entitled to enter the same and to receive a patent therefor, and had paid the entrance price and received a certificate of entry.

The first question that we find it necessary to consider is what rights, if any, the plaintiff acquired by protesting against the issuance of a patent to the defendant company under its entry. This question was fully considered by Mr. Justice Brewer while circuit judge of this circuit in the case of Wight v. Du Bois (C. C.) 21 Fed. 693, 696. Referring to and construing the statute, the learned judge said:

"It becomes necessary to see what rights this last clause gives. I think all that it covers is the right to anybody to come in and enter his protest or objection; in other words, to say to the officers of the government that the applicant has not complied with the terms of the statute, and to insist that there shall be an examination by such officers to see if the terms have in fact been complied with. He does not appear as a party asserting his own rights; but if we may, so to speak, parallel these proceedings with those in a court, such an objector appears as an amicus curiæ,—a friend of the court, —to suggest that there has been error, and that the proceedings be stayed until further examination can be had. Such a protest does not bring the protestant into court for the assertion of his own title or rights; does not revivify rights lost by a failure to adverse. True, if the protest or objection is sustained, the proceedings will be set aside, new ones must be commenced, and then the objector may be in a position to assert his rights; but if the protest or objection be not sustained the objector, like an amicus curiæ, has nothing more to say in the matter. In other words, the right to protest is not the right to contest. The latter is lost by the failure to adverse. The former remains open to every one, holders of adverse claims as well as others. But the protest is only to the officers of the government, challenges only the applicant's claims, and in no manner brings up for consideration any claims of the protestant. Such a protest can be made only before the land department, and, if there rejected, the protestant has no further standing to be heard anywhere. The protest cannot be made the basis of any litigation in the courts, for the courts are only open to those who have rights to assert; they sit for the determination of controversies. They do not, at the instance of strangers, review the regularity of proceedings between parties who are competent to determine such regularity, and who do not themselves invite any judicial determination."

It is well settled that when the purchase price is paid for government land to the local land office authorized to receive the same and allow the entry, and a certificate of purchase is issued to the purchaser, the right to a patent immediately attaches, and when the patent is subsequently issued it relates back to the inception of the right of the patentee. The certificate of entry invests the purchaser with the full equitable title to the land, and so far as the acquisition of title after that by any other person is concerned is equivalent to a patent. Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423; Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762; Calhoun Gold Min. Co. v. Ajax Gold Min. Co., 182 U. S. 499, 21 Sup. Ct. 885, 45 L. Ed. 1200.

This court, following the well-settled rule on the subject, has held that one who has not acquired a right to government land before its sale by the government cannot, after its sale, maintain a suit in equity to charge the purchaser of the land from the United States with a trust in his favor, upon the ground that the United States sold it to the purchaser through an error of law. Hartman v. Warren, 76 Fed. 157, 22 C. C. A. 30.

When the certificate of entry was issued to the defendant company the plaintiff was an entire stranger to the proceedings. He neither had nor claimed to have any kind of right or interest in and to these mining claims. He had taken no step to initiate a right or claim to them, and after the government had parted with its title to them it was too late for him to do so. It was not until after the defendant company had been adjudged to have the right to enter the land, and the entrance money had been paid and a certificate of entry issued, that the plaintiff filed his protest against the issuance of a patent to the

defendant company. Granting that a stranger may "protest" against the issue of a patent, he acquires thereby no right or equity in the land which can be made the basis of an equity suit to annul the patent or to charge the patentee as a trustee of the legal title for the protestant.

At the time the defendant company made application for a patent and at the time it paid for and received the certificate of entry for the mining claims the plaintiff does not claim to have done anything to invest him with any right or claim to the land. Previous to the time the defendant company paid the entrance money for the land and received the certificate of purchase, all the adverse claims and protests that had been filed against the issuance of a patent to the defendant company had been dismissed by the land department. The only parties, therefore, having any concern with or interest in the entry at the time it was made were the United States as the owner of the land, and the defendant company as the purchaser; and if the United States was satisfied of the right of the defendant company to purchase the land, and sold and conveyed it to the defendant company accordingly, no one not then having any right, claim, or equity in the land, but whose relation was that of a total stranger to the proceeding, can afterwards assume the role of guardian for the government, and by a mere protest invoke the aid of a court of equity to set aside and annul its conveyance for alleged errors and mistakes which in no manner affect any right of the protestant existing at the time of the sale, and after the sale and conveyance it was too late to initiate or acquire any such right.

The decree of the circuit court is affirmed.