## BEALS *v.* CONE.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 84. Argued November 11, 12, 1902.—Decided January 26, 1903.

There is no general right to a writ of error from this court to the courts of a State; nor does the mere fact that the action was brought under sections 2325 and 2326 of the Revised Statutes in support of an adverse claim, entitle the defeated party to a writ of error to the state court. There is but a special right to bring such cases, and such cases only, as disclose a Federal question distinctly ruled adversely to the plaintiff in error. Where no title, right, privilege or immunity of a Federal nature was set up and claimed, nor the validity of any Federal statute denied in the state court, nor the validity of any state statute challenged prior to the judgment of affirmance in the highest court of the State, on the ground of its repugnance to paramount Federal law, this court is not justified in taking jurisdiction.

Generally speaking estoppel and *res judicata* present questions of local, and not of Federal, law.

THIS is what is known in the mining regions as an "adverse suit," brought under the authority of sections 2325 and 2326, Rev. Stat., in the District Court of the county of El Paso, Colorado, to contest the right of defendants to a patent for the Ophir lode mining claim. The plaintiff claimed a portion of this ground as a part of his own mining claim, and the question presented was as to the priority of right thereto of the respective parties by virtue of discovery and location. Judgment was rendered in the District Court in favor of the defendants, which judgment was affirmed by the Supreme Court of the State. 27 Colorado, 473. Thereupon the case was brought here on writ of error.

In the complaint plaintiff averred that on or about January 1, 1893, and ever since, he was the owner and in possession of the Tecumseh lode mining claim; that on or about April 1, 1896, the defendants wrongfully entered upon a parcel of said claim, to wit, all that part thereof included within the exterior lines of the Ophir lode mining claim, and that they have ever since

wrongfully withheld the possession of said parcel from the plaintiff. The answer denied the allegations of the complaint, and pleaded as a second defence that before the alleged discovery of the Tecumseh lode mining claim, to wit, on February 3, 1892, the defendants, or their grantors, were and defendants still are the owners of the Ophir lode mining claim; and that by reason of such ownership they are entitled to the possession of the ground in dispute. To this answer a replication was filed, setting forth that defendants on February 10, 1893, made a mineral entry which included said Ophir lode; that subsequently plaintiff, with others, filed a protest against that portion of the entry which related to the Ophir lode—such protest charging, among other things, that there had been no discovery of any vein, lode, ledge or deposit of mineral therein; that on a hearing there was an adjudication by the Commissioner of the General Land Office, affirmed by the Secretary of the Interior, that no discovery had been made, and canceling the entry. Plaintiff also alleged that at the hearing on said protest Cone, one of the defendants, testified that no vein had been discovered in the Ophir claim and no work done on any lode therein during the year 1893, and that the plaintiff was induced by such testimony to go to large expenditures in exploring for mineral in the ground in conflict between the two claims, the defendants knowing at all times that such expenditures were being made in reliance upon the truth of such testimony. In other words, the plaintiff in his replication pleaded two defences to defendants' claim of title, first *res judicata* by reason of the action of the Secretary of the Interior in setting aside the original application for entry of the Ophir lode; and, second, estoppel by reason of the testimony given by one of the defendants. A demurrer to this replication was sustained, and the case went to trial upon the complaint and answer.

*Mr. H. B. Johnson* for plaintiff in error.

*Mr. Charles S. Thomas* for defendants in error. *Mr. William H. Bryant* and *Mr. Harry H. Lee* were with him on the brief.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The jurisdiction of this court is denied. The validity of a treaty or statute of or authority exercised under the United States was not drawn in question in the state courts, nor was the validity of a statute of or authority exercised under the State of Colorado challenged on the ground of being repugnant to the Constitution, treaties or laws of the United States. So that the jurisdiction of this court depends on whether some title, right, privilege or immunity of a Federal nature was specially set up and claimed by the plaintiff in error and denied by the state courts. Rev. Stat. sec. 709.

The mere fact that this is an action brought under sections 2325 and 2326, Rev. Stat., in support of an adverse claim does not of itself entitle the defeated party to a writ of error. Although brought under the authority of a Federal statute, the questions involved may be only of general or local law. *Blackburn* v. *Portland Gold Mining Company*, 175 U. S. 571; *Shoshone Mining Company* v. *Rutter*, 177 U. S. 505.

Two questions of law arose on the pleadings. Both were presented by the demurrer to the replication; one, a question of estoppel; the other, of *res judicata*. The estoppel was not one of record, but *in pais*, arising, as contended from contradictory statements made by one of the defendants, at a different time and place. Whether such statements work an estoppel depends not upon the Constitution or any law of Congress, involves no Federal question, but is determined by rules of general law.

With respect to the other question, this may be said: The validity of the denial of the original application for entry was not challenged. It was accepted as conclusive, and a subsequent entry was relied upon. The rule of *res judicata* was, however, invoked by plaintiff on the ground that a question of fact had been decided in the first application, which, as alleged, was conclusive between the parties in this action. But the applicability of the rule depends on the fact that the parties to the two actions or proceedings are the same and also acting in the same right. Here the parties to the prior proceeding were the ap-

plicants for the patent and the United States, and the matters decided bound them, and them only. The fact that this plaintiff, with others, filed a protest against the entry did not make them parties to the application to the extent that they were concluded by a decision either way. There is no suggestion in the pleadings that the protestants were in any way interested in the ground applied for, or that they were acting other than as good citizens, seeking to prevent a wrong upon the government. Their standing in the proceeding was in the nature of *amici curiæ*. As such, whatever the result, no rule of *res judicata* could be invoked by or against them. Hence the ruling on the demurrer was not concerning the effect of a decision made by the Land Department upon the parties to the proceeding, but a mere determination that one who was not a party could not claim the advantages of a party. It is not open to question that the trial court properly sustained the demurrer to this portion of the replication. To call this the decision of a Federal question adverse to the plaintiff is so manifestly without foundation that it may rightfully be disregarded.

The record of the trial, which took place before a jury, is voluminous—the bill of exceptions containing the testimony, the instructions and the proceedings on the motion for a new trial filling 436 printed pages. The testimony was mainly directed to such matters of fact as the time and place of discovery of mineral, the character of the veins, the per cent of mineral and the general nature of the rock formations in which the veins were alleged to have been discovered. From the beginning of the trial to the end of the testimony there appears no single distinct claim based upon the Constitution or statutes of the United States. No statute of the State of Colorado was questioned, nor was any title, right, privilege or immunity under the Constitution or laws of the United States specially set up or claimed. In the instructions asked and refused, as well as in those given, there is only a general mention of the laws of the United States and none of any particular statute. In the motion for a new trial as well as in the assignments of error in the Supreme Court of the State there is not the slightest reference to the Constitution, the laws of the United States or

any section or part thereof. And in the opinion of the Supreme Court, outside of the matters of estoppel and *res judicata* before referred to, there is nothing to even suggest that it was requested to consider any question of a title, right, privilege or immunity under the Constitution or laws of the United States. Indeed, while this case has evidently been hotly contested, yet the matters which were subjects of controversy and determination were questions of fact concerning the time, extent and effect of the alleged discoveries of mineral, and also alleged wrongs in respect to the jury. To those matters, and to those alone, was the attention of the parties and the courts directed. Counsel for plaintiff in error has filed an elaborate brief of 249 printed pages, which is able and exhaustive, both on questions of mining law and the conduct of the trial. One cannot, however, fail to be impressed, after a perusal thereof, with the fact of a failure to recognize that there is no general right to a writ, of error from this court to the courts of a State; that there is but a special right, a right to bring such cases, and such cases only, as disclose a Federal question distinctly ruled adversely to the plaintiff in error. We fail to see that any title, right, privilege or immunity of a Federal nature was specially set up and claimed. Very likely the construction and the effect of Federal statutes were, in a general way, discussed and considered, but nowhere do we find that special setting up or claiming of a Federal right which justifies us in taking jurisdiction. As we have stated, the validity of no Federal statute was denied in the state courts. Neither did the plaintiff in error, prior to the judgment of affirmance in the Supreme Court, challenge the validity of any state statute on the ground of its repugnance to paramount Federal law.

The writ of error is

*Dismissed.*