**Kenneth M. KALE, Plaintiff-Appellant,**

v.

**The UNITED STATES of America et al., Defendants-Appellees.**

No. 26020.

United States Court of Appeals, Ninth Circuit.

Dec. 17, 1973.

Kenneth M. Kale, in pro per.

Robert L. Meyer, U. S. Atty., Los Angeles, Cal., James Akers, Asst. U. S. Atty., Glen R. Goodsell, Atty. (argued), Dept. of Justice, Dale K. Frizzell, Asst. Atty. Gen., Land & Natural Resources Div., Dept. of Justice, Washington, D. C., Edward D. Neuhoff, San Marino, Cal., and Milo V. Olson, Los Angeles, Cal., (argued), for Sea View Estates, and for defendants-appellees.

Before BROWNING, HUFSTEDLER and CHOY, Circuit Judges.

## ORDER

After rehearing of this appeal and consideration of the additional briefs and oral arguments of the parties, our original opinion filed herein on January 18, 1973 is withdrawn and we substitute therefor the attached opinion.

No further motion for rehearing will be entertained on any ground covered by the petition for rehearing and the rehearing just concluded.

CHOY, Circuit Judge:

Kenneth M. Kale, a Chickasaw Indian, brought suit in federal court alleging that the Secretary of the Interior (the Secretary) had improperly denied his Indian allotment petition-application covering land in Coachella Valley, Riverside County, California. Kale sought to enjoin the enforcement of a California judgment which, relying on a federal land patent issued to one Errett Lobban Cord, quieted title to the land in Sea View Estates, Inc. (Sea View) and ordered Kale and his family ejected. The district court granted summary judgment against Kale. We affirm.

Cord, a holder of Soldier's Additional Homestead Rights,[1] filed an application for 275 acres of public land on April 9, 1962 with the Bureau of Land Management (BLM), a division of the Department of the Interior, pursuant to 43 U. S.C. §§ 274, 278. The BLM classified the 275 acres as being proper for Soldier's Additional Homestead Title Transfer on June 15, 1964 after determining that the land was not needed for retention in federal ownership, was not mineral in character and was suitable in a broad sense for some farming use.

Kale filed an Indian allotment[2] petition-application for 160 acres of land pursuant to 25 U.S.C. § 334 on October 6, 1966. Ninety-five of the acres were within the area applied for by Cord. In November, 1966 Kale entered a portion of the land covered by Cord's application and placed a mobile home there. Kale subsequently built a water tower, stock corral, and made other improvements.

The BLM, on February 8, 1967, authorized publication of notice that a patent

---

1. Soldier's Additional Homestead Rights were created by the Act of June 8, 1872, now 43 U.S.C. § 274. Congress intended that soldiers who had received less than 160 acres of public lands could apply for an additional amount to make up the 160 acres. "Scrip" was issued entitling the holder to land patents upon presentation to the Secretary of the Interior. A soldier's additional right was both inheritable and assignable. 43 C. F.R. § 132.2 (1954).

2. The General Allotment Act of 1887, as amended, 25 U.S.C. § 334, provided for the allotment of lands of the United States not otherwise appropriated, to eligible Indians who made settlement on those lands. "The main purpose of the General Allotment Act was to end the tribal and nomadic life of the Indians. . . ." Hopkins v. United States, 414 F.2d 464, 467 (9th Cir. 1969).

was to be issued to Cord.[3] Cord published notice for five consecutive weeks in the Coachella Valley *Sun*, the local newspaper. The notice called for any protestant to file his objection with the local BLM office. Although Kale had notice of the proposed action of the BLM, he failed to file a protest.[4]

The BLM granted a land patent to Cord for the 275 acres on June 22, 1967. Cord and his wife conveyed the property to Sea View on April 22, 1968. Sea View commenced suit for ejectment and to quiet title against Kale in state court in June, 1968. Pending that lawsuit, on December 13, 1968, the Secretary denied Kale's petition-application for the entire 160 acres he sought, finding that 95 of the acres had been patented to Cord and were not under the jurisdiction of the Department. The Secretary also found that all but 5 of the remaining 65 acres were in a proposed withdrawal for the Bureau of Reclamation, and that even assuming all the lands were immediately available, they were not suitable for Indian allotment.[5]

The California court entered judgment for Sea View on March 10, 1969, quieting title in Sea View and ruling that Kale had no right, title, or interest in the 95 acres in controversy. Kale filed the present action on March 31, 1969. The district court concluded as matters of law that: (1) the real property in question did not qualify for Indi-

an allotment because it had been previously appropriated and had not been classified for settlement under Indian allotment rights; (2) Kale had failed to exhaust available administrative remedies and was barred from judicial relief; and (3) the judgment of the California court was res judicata as to the ownership of the land.

REGULATORY SCHEME

Use of soldier's rights and Indian allotments was relatively simple until the Secretary of the Interior, pursuant to Executive Order 6910, November 26, 1934, and Executive Order 6964, February 5, 1935, withdrew all public lands in the ten western states from selection or settlement. Thereafter, classification by the Secretary was a prerequisite to a soldier's scrip selection or Indian settlement. Section 7 of the Taylor Grazing Act, 43 U.S.C. § 315f, authorized the Secretary "in his discretion, to examine and classify any lands withdrawn or reserved" by the executive orders. Bronken v. Morton, 473 F.2d 790, 793 (9th Cir. 1973).

When Cord filed his application for public lands in 1962, the regulations then in effect required that the owner of a soldier's additional right first select a tract of land and then file a formal application. 43 C.F.R. § 132.6 (1954). The application was considered a petition for classification of the lands

3. The regulations, 43 C.F.R. § 1824 et seq. (1967), are intended to "bring to the knowledge and attention of all persons who are or who might be interested in the lands described . . . the fact that it is proposed to establish and perfect such claims, to the end that they may interpose any objection they may have. . . ." 43 C.F.R. § 1824.0–1 (1967).

4. One Amos Hopkins did file a protest to the proposed action of the BLM. The protest was dismissed on April 14, 1967, for the reason that settlement under § 4 of the General Allotment Act was not available to an Indian until authorized by classification. The selection by an Indian carried no right to a particular tract of land. In addition, the BLM found Cord's application senior to any other. (Record on Appeal at 76–78).

5. The denial read in part as follows:
The lands for which you have submitted a petition-application do not meet the criteria of the law and the regulations. They have poor soil and are almost devoid of forage. They are desert in character. There is no available supply of water. Thus, they do not qualify for allotment under the criteria of 43 CFR 2410.1–1.–3(d)(6) [sic] or as either agricultural or grazing lands. They are chiefly valuable or suitable for purposes other than agriculture or grazing. They cannot be classified as suitable for Indian settlement and allotment. Therefore, the lands are hereby classified as not suitable for Indian allotment purposes.

sought as proper for soldier's scrip selection. 43 C.F.R. § 296.2 (1954). The filing of the application did not give Cord the right to occupy or settle upon the land and settlement prior to the allowance of his selection constituted a trespass. 43 C.F.R. § 296.5 (1954).

Detailed classification procedures were adopted during the pendency of Cord's petition-application. After determining the regularity of a petition, a proposed decision was required to be issued containing a statement of the reasons for the classification. 43 C.F.R. § 2411.1–3(a) (1964). For thirty days protests could be filed. 43 C.F.R. § 2411.1–4(a) (1964). If no protests were filed, the proposed classification action was issued as the initial decision of the State director. 43 C.F.R. § 2411.1–4(a)(1) (1964). For sixty days the decision was subject to the exercise of the supervisory authority of the Secretary of the Interior and became a final order, reviewable by a court, after that time. 43 C.F.R. § 2411.1(a), (b) (1964). If public land was classified pursuant to a petition-application, the applicant was entitled to a preference right of entry. If the application of the preference right claimant was rejected, the next applicant in order of filing succeeded to the preference right. If no successor existed, the land was opened to application for the purpose it was classified or the classification could be revoked. 43 C.F.R. § 2411.3 (1964).

When Kale filed his Indian allotment petition-application in 1966, the regulations specified that settlement had to be authorized by classification. 43 C.F.R. § 2212.0–3(b) (1964). Settlement prior to that time constituted a trespass. 43 C.F.R. § 2411.3–3 (1966). Once classification occurred and an allotment application was approved, the land was segregated for the Indian allottee and later applications rejected. 43 C.F.R. § 2212.-1–3(c) (1964). After the issuance of a "certificate of allotment," 43 C.F.R. § 2212.2–1(a) (1964), a trust patent was granted two years from the date of set-tlement. 43 C.F.R. § 2212.2–2(a) (1964).

The classification procedures in effect when Kale filed his petition-application were basically the same as in 1964 when Cord's petition for classification was granted with one significant addition. The new section, 43 C.F.R. § 2411.1–1(f) (1966), read as follows:

(1) A final order of the Secretary shall continue in full force and effect so long as the lands remain subject to classification under the authorities cited in Subpart 2410 until an authorized officer revokes or modifies it. *Until it is so revoked or modified, all applications and petition-applications for the lands not consistent with the classification of the lands will not be allowed.* Any payments submitted therewith will be returned. If the order is revoked or modified, the land will be opened to entry on an equal-opportunity basis after public notice in accordance with applicable regulations for the purpose for which it may be classified. (emphasis added).

 Cord complied precisely with the regulations governing his application for the 95 acres in question and was entitled to a preference right of entry at the time of Kale's application. The BLM's classification of the land as proper for soldier's rights in 1964, although not precluding holders of those rights from filing applications until a patent had been issued to Cord, did foreclose Kale's application because it was not consistent with the classification. 43 C.F.R. § 2411.1–1(f) (1966). Kale's settlement was a trespass. Congress did not intend that an Indian acquire a vested right to an allotment simply by settling on a piece of land and then filing an application. Hopkins v. United States, 414 F.2d 464, 467–468 (9th Cir. 1969). Indian allotment rights may be exercised only upon public lands not otherwise appropriated. The land in question was appropriated to holders of soldier's rights after the 1964 classification decision. Until that classification was

revoked, Kale's petition-application for the 95 acres was properly disallowed.

■ Kale has no basis for an attack upon the land patent granted to Cord. A United States patent is protected from easy third-party attack. Hoofnagle v. Anderson, 20 U.S. (7 Wheat.) 212, 5 L.Ed. 437 (1822). It is not sufficient for one challenging a patent to show that the patentee should not have received the patent; he must also show that he (the challenger) is entitled to it. Duluth & Iron Range RR. v. Roy, 173 U.S. 587, 590, 19 S.Ct. 549, 43 L.Ed. 820 (1899); Fisher v. Rule, 248 U.S. 314, 318, 39 S.Ct. 122, 63 L.Ed. 263 (1919). Kale can satisfy neither of the criteria for a successful attack upon a land patent. Cord had a preference right to the land from 1964 on and Kale failed to establish that he was any more than a trespasser.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ The general rule of judicial administration is that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Application of the rule is not jurisdictional, but calls for the sound exercise of judicial discretion. United States v. Abilene & So. Ry., 265 U.S. 274, 282, 44 S.Ct. 565, 68 L.Ed. 1016 (1924).

The district court imposed the exhaustion doctrine to bar judicial relief because Kale had failed to protest the issuance of a land patent to Cord and had failed to appeal the Secretary's denial of his application for Indian allotment rights.

■ Kale had no administrative appeal from the denial of his own application. The denial was not made by the BLM, but by the Secretary. The regulations in effect at that time provided that no appeal would lie from a decision of the Secretary. 43 C.F.R. § 1844.9 (1956). Kale was entitled to bring the present action in the federal district court under 25 U.S.C. § 345 and 28 U.S. C. § 1353.

■ But, Kale's failure to protest the impending patent to Cord does preclude relief.[6] The regulations provided for publication of notice and the filing of protests with the local BLM office. Subsequent appellate procedures through the Director of the BLM and finally to the Secretary are prescribed in 43 C.F.R. §§ 1840–44 (1956). The intent of the regulations is to allow the BLM to exercise its discretion and utilize its expertise in the complex area of federal land law. Protests must be filed prior to the grant of a patent because of the patent's virtual immunity from attack. Kale cannot be permitted to circumvent the administrative procedures, particularly when he had actual notice of the necessity of a protest.

The district court correctly entered summary judgment for Sea View since Kale had no basis for an attack on the land patent from the United States to Cord, and Kale failed to exhaust available administrative remedies in not protesting the impending patent to Cord. We need not reach the other issue in this appeal.

Affirmed.

6. The regulation, 43 C.F.R. § 2212.3–2 (1967), requiring that the BLM give notice to the Indian agent for a particular tribe of any action adverse to an Indian allottee's interests does not apply to Kale since he was never an *allottee* as to any of the land involved here.