BRISCOE, J,
dissenting:
I respectfully dissent. This is a Rule 12(b)(6) dismissal, which we review de novo. The outcome of this case revolves around whether Congress intended the 1872 Mining Law to preclude judicial review under the APA. The narrow issue presented is whether the agency has overcome the strong presumption favoring judicial review of the agency’s action under the APA, where the text of the 1872 Mining Law expressly provides for participation by protesters in the agency proceeding.

I. Sovereign immunity is not at issue

Although the majority and the district court frame the controlling issue as whether the APA waives sovereign immunity for plaintiffs to challenge the issuance of a patent pursuant to the 1872 Mining Law, sovereign immunity is not at issue in this case.
According to the district court, “[t]he two exceptions to the waiver of sovereign immunity under [5 U.S.C.] § 702 are: (1) when a statute specifically precludes judicial review of agency action, or (2) when the subject action is committed to the agency’s discretion by law. 5 U.S.C. § 701(a).” Order 01/12/05, at 7. The district court reasons, “[t]hus, if the 1872 Mining Law precludes Plaintiffs’ claims against Federal Defendants, then the Federal Defendants are entitled to sovereign immunity.” Order 01/12/05, at 7. The majority appears to agree with the district court that this case turns on whether the plaintiffs’ claims are barred by sovereign immunity, mentioning “sovereign immunity” several times and framing the issue as “whether the APA waives sovereign immunity for Plaintiffs.” Maj. Op. at 1180.[1] Contrary to the district court’s and the majority’s assertions, sovereign immunity is not at issue.
The district court’s and majority’s analysis conflicts with the APA. See 5 U.S.C. §§ 701(a), 702. According to 5 U.S.C. § 701(a), “[t]his chapter applies, according to the provisions thereof, except to the extent that — (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.” 5 U.S.C. § 701(a). Section 702 waives sovereign immunity “in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity.” Robbins v. U.S. Bureau of Land Mgmt., 438 F.3d 1074, 1081 (10th Cir.2006) (internal quotation marks omitted); Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir.2005). While 5 U.S.C. § 702 of the APA waives sovereign immunity, 5 U.S.C. § 702 includes two exceptions to the waiver of sovereign immunity: “Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.” 5 U.S.C. § 702; Robbins, 438 F.3d at 1080; Neighbors for Rational Dev., Inc. v. Norton, 379 F.3d 956, 961 (10th Cir.2004).
*1194 Contrary to the district court’s and majority’s assertions, 5 U.S.C. § 701(a) does not list exceptions to the APA’s waiver of sovereign immunity, which are actually listed in 5 U.S.C. § 702. 5 U.S.C. § 701(a) lists two instances where the APA would not apply to agency action, and it does not address the APA’s waiver of sovereign immunity. Thus, if the 1872 Mining Law precludes judicial review under 5 U.S.C. § 701(a), as the district court and majority contend, then the APA simply does not apply.

II. There is a strong presumption favoring judicial review

The APA applies to agency action, unless the relevant “statute[ ] preclude[s] judicial review.” 5 U.S.C. § 701(a)(1). “The APA confers a general cause of action upon persons ‘adversely affected or aggrieved by agency action’ ..., but withdraws that cause of action to the extent the relevant statute ‘precluded] judicial review.’ ” Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (quoting 5 U.S.C. § 702 and 5 U.S.C. § 701(a)(1), respectively).
The majority incorrectly describes the burden of proof to show preclusion of judicial review pursuant to 5 U.S.C. § 701(a)(1). Without imposing the burden on the agency, the majority observes generally that “[a] presumption of reviewability accompanies agency actions under the APA, but it may be overcome.” Maj. Op. at 1181. The majority fails to charge the agency with the burden to establish preclusion, and it fails to apply the strong presumption favoring judicial review.
The agency must demonstrate “nonre-viewability,” which is the “exception” because “judicial review of such administrative action is the rule.” Barlow v. Collins, 397 U.S. 159, 166-67, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). More specifically, the agency “bears the heavy burden of overcoming the strong presumption that Congress did not mean to prohibit all judicial review.” Dunlop v. Bachowski, 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) (emphasis added); Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); McAlpine v. United States, 112 F.3d 1429, 1432 (10th Cir.1997).
The majority requires a lower evidentia-ry showing to establish that judicial review is precluded. Despite the strong presumption favoring judicial review, the majority appears to conclude that judicial review is precluded upon a showing of sufficient evidence. Without citation to any authority, the majority suggests that the Block inquiry is equivalent to a review for sufficiency of the evidence: “[W]e look to the Block factors to determine whether there is sufficient evidence of congressional intent to preclude review.” Maj. Op. at 1182-83; see also id. at 28 (“[W]e find consideration of the other Block factors sufficient to evidence an intent to preclude review.”). This standard is incorrect.
In contrast to the standard applied by the majority, the agency must show more than sufficiency of the evidence to show implied preclusion of judicial review. The Supreme Court has stated that “only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.” Abbott Labs. v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (internal quotation marks omitted); Block, 467 U.S. at 350-51, 104 S.Ct. 2450 (explaining that the “ ‘clear and convincing evidence’ standard is not a rigid evidentiary test”). The majority narrowly construes Block, contending that “[t]he presumption of judicial review controls where substantial doubt exists about congressional intent on the preclusion issue, but it is hardly conclusive in other circumstances.” Maj. Op. *1195 at 1181 n. 5. Contrary to the majority’s assertion, the Court held that “the presumption favoring judicial review [is] overcome, whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme.” Block, 467 U.S. 340, 350-51, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (internal quotations omitted). “[J]udicial review of final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.” Wyoming v. United States, 279 F.3d 1214, 1236 (10th Cir.2002) (internal quotation marks omitted). Given the strong presumption favoring reviewability, the Block inquiry requires a more rigorous showing than a mere sufficiency of the evidence.

III. The agency has not shown implied preclusion of judicial review

I also disagree with the majority’s application of the Block inquiry to the 1872 Mining Law. The BLM asserts three arguments in support of implied preclusion: (1) contemporaneous judicial construction and acquiescence; (2) legislative and judicial history; and (3) statutory scheme. See Block, 467 U.S. at 349, 104 S.Ct. 2450. In holding that Congress intended to preclude judicial review, the majority relies upon the legislative and judicial history and the statutory scheme, but not the contemporaneous judicial construction and acquiescence. Maj. Op. at 1190. The agency fails to show that Congress intended to preclude judicial review.

A. Legislative and judicial history

Because the legislative history and judicial history conflict with the text of the Mining Law, the agency fails to show that judicial review is precluded. Nonetheless, the majority attempts to find preclusion, relying on legislative history of statutes that preceded the enactment of the Mining Law and legislative history that conflicts with the text of the Mining Law.
For example, the majority relies upon the legislative history of the Lode Law of 1866 and the Placer Act of 1870. Maj. Op. at 1183. The legislative history of these earlier statutes is irrelevant in determining whether Congress intended to preclude judicial review in the 1872 Mining Law, especially where the Mining Law alone allowed protesters to participate. See 14 Stat. 251, 251-53 (1866); 16 Stat. 217, 217-18 (1870). The majority asserts that the legislative history of the Lode Law and the Placer Act are “extremely relevant” because “Congress intended that the 1872 Mining Law would incorporate these statutes,” citing three pages from the congressional debates concerning the 1872 Mining Law. Maj. Op. at 1183 n. 7 (citing Cong. Globe, 42nd Cong., 2d Session, at 532-34). Although there are several statements regarding the representatives’ concern that the passage of the 1872 Mining Law not affect existing rights under the prior statutes, there is no statement in the congressional debate regarding the “incorporation” of the Lode Law or the Placer Act into the 1872 Mining Law. See Cong. Globe, 42nd Cong., 2d Session, at 532-34.
Moreover, the text of the Mining Law actually conflicts with the majority’s selective quotations from the legislative history. In quoting from the legislative history, the majority emphasizes the finality of the patent and a desire to decrease litigation. For example, the majority states that “Congress, in passing the 1872 Mining Law, was in search of a more definite rule because, in part, ‘the whole region was in litigation.’ ” Maj. Op. at 1185 (quoting Cong. Globe, 42nd Cong., 2d Session, at 2459). The majority concludes that the “legislative history reflects a clear concern with the finality of the patent.” Maj. Op. at 1185. From these statements in the *1196 legislative history, the majority concludes that “[p]ermitting a challenge by third parties with no interest in the land would allow the kind of lengthy litigation over rights that a patent was designed to avoid.” Maj. Op. at 1185. But these quotes from legislative history, which serve as the foundation for the majority’s ultimate conclusions, conflict with the text and structure of the Mining Law.
While the majority cites scattered comments in the legislative history to emphasize the finality of the patent and reflect a desire to decrease litigation, the text and structure of the Mining Law actually increased litigation. The Mining Law provides an express cause of action for adverse claimants, who assert ownership interest over the land and are competing for title. 30 U.S.C. § 30. Additionally, the Mining Law allows third parties to participate in the agency proceeding by filing a protest with the BLM to provide evidence as to why the applicant has not satisfied the requirements for a patent. 30 U.S.C. § 29. Congress allowed third-party protesters to participate in the administrative proceeding, even though these third parties claimed no ownership interest in the land, and even though neither the administrative state nor modern principles of standing had developed. Thus, Sections 29 and 30 unquestionably increased litigation over the issuance of a patent by granting adverse claimants a cause of action and allowing third parties to participate in the administrative proceeding. In our preclusion analysis, we should give greater weight to the statute’s text, and little, if any, weight to legislative history that conflicts with it.
Just as legislative history does not establish that Congress intended to preclude judicial review, neither does judicial history. In considering judicial history, the majority relies upon cases from the 1880s, but these cases have little, if any, applicability to the questions presented.
None of the majority’s cases involve preclusion of judicial review as to a protester’s challenge of the BLM’s determination. See Beals v. Cone, 188 U.S. 184, 187, 23 S.Ct. 275, 47 L.Ed. 435 (1903); Sparks v. Pierce, 115 U.S. 408, 413, 6 S.Ct. 102, 29 L.Ed. 428 (1885); Steel v. St. Louis Smelting & Refining Co., 106 U.S. 447, 451, 1 S.Ct. 389, 27 L.Ed. 226 (1882); Smelting Co. v. Kemp, 104 U.S. 636, 640-41, 26 L.Ed. 875 (1881); Wight v. Dubois, 21 F. 693, 696 (C.C.D.Colo.1884). These cases do not support the majority’s conclusion that Congress intended to preclude judicial review of the BLM’s decisions in the Mining Law.
Additionally, the majority’s cases are distinguishable because they concerned the limited concept of standing at the time. See, e.g., Smelting Co., 104 U.S. at 645-47. For example, the majority quotes Wight for the proposition that “ ‘the protestant has no further standing to be heard anywhere. The protest cannot be made the basis of any litigation in the court.’ ” Maj. Op. at 1187 (quoting Wight, 21 F. at 696). But the analysis in Wight rested upon the premise that a protester, in 1884, had no standing to sue in court regarding the issuance of a patent. Wight, 21 F. at 696. Notably, the court’s decision in Wight did not concern Congressional intent to preclude judicial review under the Mining Law.
The majority quotes Beals v. Cone, 188 U.S. 184, 23 S.Ct. 275, 47 L.Ed. 435 (1903), for the proposition that the plaintiffs’ “ ‘standing in the proceeding was in the nature of amici curioe [sic]’ ” because they had no ownership interest. Maj. Op. at 1187 (quoting Beals, 188 U.S. at 187, 23 S.Ct. 275). But this statement is quoted out of context. In Beals, the Court held that the plaintiff could not invoke res judi- *1197 cata because he was not a party in the prior proceeding, even though he filed a protest. 188 U.S. at 187, 23 S.Ct. 275. The Court held that the protesters, including plaintiff, could not use res judicata because protesters were not parties, and “[t]heir standing in the proceeding was in the nature of amici curioe [sic].” Id.
Moreover, the Supreme Court’s decisions in Smelting Company and Steel are distinguishable because they involved the distinction between courts of law and of equity. See Smelting Co., 104 U.S. at 645-47 (1881); Steel, 106 U.S. at 452-53, 1 S.Ct. 389 (holding that, while the plaintiff could not assail a patent based on a false and perjured affidavit in an action at law, he could seek relief from a court of equity if he had an equitable right to the premises). Thus, although the majority relies upon cases from the 1880s, these cases do not support the majority’s conclusion.
The majority bolsters its conclusion using modern judicial history, Maj. Op. at 1187 - 88, but these cases are distinguishable because they did not involve the Mining Law. For example, the majority relies upon Kale v. United States, 489 F.2d 449 (9th Cir.1973), Maj. Op. at 1188, but Kale did not involve the Mining Law. Instead, in Kale, a Chickasaw Indian claimed that the agency improperly denied his allotment petition-application by determining that the land at issue was previously appropriated pursuant to the Soldier’s Additional Homestead Rights, 43 U.S.C. § 274. Kale, 489 F.2d at 453-54. Similarly, Leisnoi, Inc. v. United States, 313 F.3d 1181 (9th Cir.2002), is also cited, but Leisnoi did not involve the 1872 Mining Law. Maj. Op. at 1188. Instead, Leisnoi involved a patent issued under the Alaska Native Claims Settlement Act and a suit against the United States under the Quiet Title Act, 28 U.S.C. § 2409a. 313 F.3d at 1182-83.
While the majority cites United States v. Shumway, 199 F.3d 1093 (9th Cir.1999), Maj. Op. at 1188, the patent discussion in Shumiuay was dicta, and it did not pertain to preclusion of judicial review under the APA. Shumway involved a patent for mill sites, and the court mentioned that oil, oil shale, gas, and other minerals were subject to a federal leasing system under 30 U.S.C. § 193, and not to the Mining Law after 1920. 199 F.3d at 1100.
Finally, the majority cites Raypath, Inc. v. City of Anchorage, 544 F.2d 1019 (9th Cir.1976) (per curiam), but Raypath is neither a Mining Law case nor an APA case. Instead, it concerned the issuance of a patent of public lands to the state, and the statute and deed limited the use of the land to “public purposes.” Id. at 1021 (citing 43 U.S.C. § 869).
More on point to the issue presented is South Dakota v. Andrus, 614 F.2d 1190 (8th Cir.1980). The majority did not consider Andrus, where the Eighth Circuit decided the merits of a challenge to a mineral patent under the Mining Law without determining whether the Mining Law precluded judicial review. Id. at 1193. In Andrus, South Dakota had no ownership interest in the mining claim. South Dakota intervened in the agency proceeding, arguing that the Secretary must prepare an environmental impact statement before issuing a patent. The Interior Board of Land Appeals set aside the ALJ’s decision on other grounds, but rejected South Dakota’s argument. Id. at 1192. South Dakota then filed an original action in federal district court against the United States Department of Interior and the patent applicant, seeking an order compelling an environmental impact statement. The Eighth Circuit ruled on the merits, holding that BLM’s patenting decisions do not require environmental impact statements, and without discussing wheth *1198 er the statute precluded judicial review. Id.
The majority relies upon the legislative and judicial history to conclude that Congress impliedly precluded judicial review: “Given an administrative review process for third-party issues, and the long judicial construction prior to the APA which did not permit judicial review of such claims, we would be hard pressed to conclude that the APA changed this.” Maj. Op. at 1188-89. Yet again, the majority fails to place the burden on the agency and fails to apply the strong presumption favoring judicial review. Moreover, the majority overstates the holdings of the cases cited, and ignores the conflict between the text and structure of the Mining Law and the legislative history. The legislative history and judicial history do not establish that Congress intended to preclude judicial review.

B. Statutory scheme as a whole

Nor does the statutory scheme as a whole establish that Congress intended to preclude judicial review. The majority further concludes that the statutory scheme is “indicative of Congress’ intent to preclude review to those with no adverse claim in the patented land,” because of the “limited provision for the role of third parties” in the patent process. Maj. Op. at 1191. It is true that protesters did not have a private right of action like adverse parties, but that does not establish that their claims are precluded from judicial review.
Plaintiffs argue that, because Congress provided for third party participation in the administrative process, it did not intend to preclude judicial review. In rejecting this argument, the majority reasons that “Congress, by providing a right of action for adverse claimants, certainly knew how to provide one for unsuccessful protesters.” Maj. Op. at 1191 - 92 (internal citation omitted). In holding that the Mining Law precludes judicial review, the majority relies upon Congress’ omission of a right of action in the Mining Law for third parties. For example, the majority states, “[djespite these many revisions, Congress has not chosen to amend the 1872 Mining Law to provide Plaintiffs with a right of action.” Maj. Op. at 1190.
But the test for implied preclusion of judicial review is not whether Congress provided an express right of action for the plaintiffs. “[A] plaintiff who lacks a private right of action under the underlying statute can bring suit under the APA to enforce the statute,” and he need “not rely upon an implied right of action under any other statute.” Hernandez-Avalos v. Immigration & Naturalization Serv., 50 F.3d 842, 846 (10th Cir.1995). Section 1331 confers federal question jurisdiction “on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate.” Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); Se. Kan. Cmty. Action Program, Inc. v. Lyng, 967 F.2d 1452, 1455 n. 4 (10th Cir.1992); Wilder v. Prokop, 846 F.2d 613, 618 (10th Cir.1988); Labash v. U.S. Dep’t of Army, 668 F.2d 1153, 1156 (10th Cir.1982). Thus, the protesters may challenge BLM’s action under the APA, regardless of whether the Mining Law includes an express or implied private right of action, and we have federal question subject matter jurisdiction.
Nor does congressional silence demonstrate intent to preclude judicial review. Congress was silent about judicial review for protesters under the Mining Law, but silence is not determinative. “Mere silence in the statute should not be read as precluding judicial review under the APA.” Sierra Club v. Peterson, 705 F.2d 1475, 1478-79 (9th Cir.1983). Contrary to the majority’s analysis, congressional silence *1199 does not support an inference that Congress intended to preclude judicial review.
Since the third-party protesters would not have had standing to file suit in federal court in the 1880s, it is rather surprising that Congress gave third-party protesters a participation role in the BLM proceeding. Yet the majority concludes that “[t]he limited role that the protesters play in the statutory scheme, coupled with congressional interest in finality and security of title, persuade us that the statutory scheme as a whole suggests an intent to preclude judicial review.” Maj. Op. at 1191 - 92. Of course, the majority reaches this conclusion without first requiring the agency to overcome the strong presumption of judicial review.
Tellingly, the majority seems to disregard the facts of Block itself. In Block, the Supreme Court held that Congress intended to preclude judicial review for a class of milk consumers because the relevant statute did not allow milk consumers to participate in the administrative process:
Nowhere in the Act, however, is there an express provision for participation by consumers in any proceeding. In a complex scheme of this type, the omission of such a provision is sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process.
Block, 467 U.S. at 347, 104 S.Ct. 2450. Because consumers were not allowed to participate at the administrative level, the Court concluded that Congress did not intend to rely on consumers to challenge agency actions. Id. at 346-47, 104 S.Ct. 2450. From these facts, the Court found implied preclusion.
Unlike the milk consumers in Block, Congress expressly allowed protesters, as a class, to participate in the regulatory process under the Mining Law, and Congress relied upon third parties to ensure that patent applications complied with the statute by filing protests with the agency. See 30 U.S.C. § 29. Because the Mining Law allows protesters to participate in the administrative process, Congress did not intend to preclude judicial review of protesters as a class. The majority fails to discuss how this case conforms to Block.

C. Contemporaneous judicial construction and congressional acquiescence

The majority opinion does not rely upon contemporaneous judicial construction and congressional acquiescence. Congressional intent to preclude review may be inferred from “contemporaneous judicial construction barring review and the congressional acquiescence in it.” Block, 467 U.S. at 349, 104 S.Ct. 2450. The majority correctly describes the burden of showing acquiescence. Maj. Op. at 1190. To show congressional acquiescence, a claimant “bears the burden of showing abundant evidence that Congress both contemplated and authorized the previous noncongres-sional interpretation in which it now acquiesces.” Catron County Bd. of Comm’rs v. U.S. Fish & Wildlife Servs., 75 F.3d 1429, 1438 (10th Cir.1996) (internal quotations omitted). “It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law.” Id. (internal quotation marks omitted). Given this burden, the majority recognizes that the agency falls short, concluding that the “consideration of the other Block factors sufficient to evidence an intent to preclude review.” Maj. Op. at 1191.
For the reasons stated above, I would conclude that judicial review of the agency action is not precluded.

. The majority also asserts that "Plaintiffs can only sue the BLM to the extent it waived its sovereign immunity.” Maj. Op. at 1181. Without explanation, the majority "view[s] the question of whether the 1872 Mining Law precludes judicial review against a backdrop of sovereign immunity — if the review cannot be had under the APA due to § 701(a)(1) or (2), the government has not waived sovereign immunity.” Maj. Op. at 1181 n. 4.