Edith Colbert FINCH, William L. Colbert, Farris Colbert Brown, Shirley Reagan Heskitt, Roger King, Sherrie Lee Heskitt, Appellants,

v.

UNITED STATES of America and Stewart Udall, Secretary of United States Department of the Interior, Appellees.

No. 9474.

United States Court of Appeals Tenth Circuit.

Dec. 20, 1967.

Robert O. Swimmer, Oklahoma City, Okl., for appellants.

Raymond N. Zagone, Washington, D. C. (Edwin L. Weisl, Asst. Atty. Gen., B. Andrew Potter, U. S. Atty., Robert L. Berry, Asst. U. S. Atty., and S. Billings-

ley Hill, Dept. of Justice, were with him on the brief), for appellees.

Before PHILLIPS, JONES* and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Appellants, six in number and each of Indian descent, filed appropriate applications with the Bureau of Indian Affairs and received certificates that they were eligible as Indians to receive an allotment of land from the public domain under the terms of 25 U.S.C. § 334. Thereafter appellants subjectively selected certain lands located in Kiowa County, Colorado, and applied to the Land Office of the Bureau of Land Management at Denver for allotment of such lands to them. The chosen lands had been withdrawn from settlement and reserved for classification by Executive Order No. 6910 (November 26, 1934) with subsequent acknowledgment and implied approval of Congress through passage of the Taylor Grazing Act, 43 U.S.C. § 315f. Appellants therefore also petitioned the Land Board to reopen the lands for settlement pursuant to authority under the Taylor Grazing Act and as a necessary incident to the granting of an allotment. The Land Office rejected the petitions and applications after reaching the conclusion that the subject lands would not support an Indian family and were thus unsuited for Indian allotment. Findings concerning the location, topography, vegetation, land tenure pattern and general economy of the area were entered after a field examination had been made of the designated lands. The findings and conclusions of the Land Office became those of the Secretary of the Interior when he failed to act within thirty days upon appellants' request for review. 43 C.F.R. § 2411.1–1(d, e).

Appellants then initiated this action in the District Court for the Western District of Oklahoma asserting a right to the issuance of patents for the lands or, in the alternative, damages against the United States in the sum of $192,000. After review of the administrative record the District Court held that the Secretary had acted within his authority and discretion and denied relief. 263 F.Supp. 309. It is admitted that appellants have exhausted their administrative remedy and the jurisdiction of the District Court and of this court to review is not disputed.

■ The attack on the Secretary's decision as being arbitrary and capricious is not leveled against the specifics of the Secretary's findings that the selected lands are too poor to support an Indian family in the sense that the lands could be successfully used for grazing and complete self-support for appellants. In fact, appellants represent that they are non-reservation Indians and wish the lands, admittedly suitable for grazing when used in conjunction with more extensive holdings, to supplement their income and not for the single purpose of complete support. Appellants' claim is much broader and asserts that the Secretary's application of the "too poor in quality" test under present conditions constitutes a complete sterilization of the Indian right to allotment. With substantially all of the public lands now withdrawn from open entry and settlement absent the Secretary's discretionary right to reclassify for entry, the rights of Indians conferred in the Allotment Act, so say appellants, can be and are completely abrogated contrary to law. Such an argument abounds with political overtones and must be directed to Congress unless the acts of the Secretary find no justification in existent congressional mandates which do not extinguish rights once conferred. See Chase v. United States, 8 Cir., 222 F. 593; United States v. Arenas, 9 Cir., 158 F.2d 730, cert. denied 331 U.S. 842, 67 S.Ct. 1531, 91 L.Ed. 1853.

The language from section 4 of the General Allotment Act, supra, on which

appellants primarily rely reads as follows:

"Where any Indian not residing upon a reservation, or for whose tribe no reservation has been provided by treaty, Act of Congress, or Executive order, shall make settlement upon any surveyed or unsurveyed lands of the United States not otherwise appropriated, he or she shall be entitled, upon application to the local land office for the district in which the lands are located, to have the same allotted to him or her, and to his or her children, * * and patents shall be issued to them for such lands in the manner and with the restrictions as provided in sections 348 and 349 of this title."

Stripped to its bare form, appellants' contention is that under authority of this provision they are entitled to make selections and having done so are entitled to the issuance of patents covering the particular lands selected and that this right is not subject to any discretion in the Secretary and cannot be defeated by the latter's exercise thereof.

The government's position is that Congress by enacting the Taylor Grazing Act of 1934, supra, has provided otherwise. The applicable language, from the amended act of 1936, supra, reads as follows:

"Sec. 7. That the Secretary of the Interior is hereby authorized, in his discretion, to examine and classify any lands withdrawn or reserved by Executive order of November 26, 1934 (numbered 6910), * * *. Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry: * * *."

■ We deem appellants' argument to be unsound. It seems an impalpable contention that Congress intended to place the public domain beyond discretionary control and vest in individual Indian applicants an absolute right to the land of their choice. Great weight is lent to this conclusion by section 4 of the Act of February 28, 1891, 26 Stat. 795, as amended by section 17 of the Act of June 25, 1910, 36 Stat. 860, 25 U.S.C. § 336, in which Congress supplemented the General Allotment Act in providing that "such allotments to Indians on the public domain as herein provided shall be made in such areas as the President may deem proper * * *." The Taylor Act, supra, subsequently gave the Secretary of the Interior express discretionary authority to classify withdrawn lands and proscribed disposition, settlement or occupation until after such classification.

■ The appellants err not in asserting their right to an allotment but in asserting that they have an absolute right to the particular lands in question. The Secretary's construction of the Taylor Act is consistent with the Allotment Act as viewed in light of the language from the 1891 Act quoted above. As the Secretary said in John E. Balmer, 71 I.D. 66, 68 (1964), "An Indian applicant is not, of course, deprived of his right to an allotment when his application is rejected. He is merely required to apply for other land that is suitable for acquisition under the Allotment Act."

■ The Secretary's construction recognizes the right of an Indian applicant to an allotment and therefore gives effect to the Allotment Act, but at the same time gives validity to the Taylor Act which implements the policy that the "power to withhold from improper disposition and unwise uses is essential to the national policy of conservation of the rapidly diminishing public domain and its natural resources." Carl v. Udall, 114 U.S.App.D.C. 33, 309 F.2d 653, 657, citing an earlier opinion by the Secretary.[1] Nor is conservation the only reason for discretionary control. The President acting through the Interior Department must determine the agricultural suitability of the land and whether

1. Department of the Interior, Nelson A. Gerttula, Substitute-attorney-in-fact for W. E. Howell, attorney-in-fact for Frank L. Huston, Spokane 018338, Appeal from the General Land Office (A. 23158; Dec. 31, 1941).

or not an allotment will be in the best interest of the Indian. See Wise v. United States, 10 Cir., 297 F.2d 822, cert. denied 369 U.S. 876, 82 S.Ct. 1148, 8 L.Ed.2d 279. Not until these discretionary acts have been followed by the issuance of a patent does the allottee have a vested right to any particular plot of land. Raymond Bear Hill, 52 L.D. 688 (1929). See also Woodbury v. United States, 8 Cir., 170 F. 302; La Roque v. United States, 239 U.S. 62, 36 S.Ct. 22, 60 L.Ed. 147.

 The problems inherent in the administration of the public domain are many and there is no doubt that each time Congress legislates upon a subject having such a common denominator later acts have an impact upon earlier ones. Under the terms of the General Allotment Act, supra, Indians can "make settlement upon any surveyed or unsurveyed lands of the United States not otherwise appropriated" and by regulation cannot be refused an allotment from unreserved lands because the lands are too poor in quality. 43 C.F.R. 2210.0–7(a) (3) provides:

"Where an Indian makes settlement in good faith upon lands not reserved therefrom, an allotment therefor cannot be denied on the grounds that the lands are too poor in quality"

The regulation is not specifically applicable in the case at bar because the chosen lands are not unreserved nor have appellants made settlement [2] thereon. Daniels v. United States, W.D.Okl., 247 F.Supp. 193. However from this regulatory premise appellants assert that if the Secretary is precluded from denying an allotment upon poor quality unreserved land then he should be denied the right to refuse allotment upon reserved land because "there is no land left for the Indian to make application on except reserved land." The argument is legally faulty. The impact of the Executive withdrawal of public lands in 1934, noted with congressional approval in the 1936 amendment to the Taylor Grazing Act, and the grant of discretionary power to the Secretary in the Act to reclassify lands, does no more to the General Allotment Act than make settlement a condition subsequent to allotment. The *right* to allotment persists and is not "sterilized" but now provides for an administrative judgment about suitability prior to rather than after settlement. The General Allotment Act never did and does not now vest a right to particular lands to a particular Indian upon selection. Approval of his selection and location never was and is not now a mere ministerial duty of the Secretary. Wise v. United States, supra; Lemieux v. United States, 8 Cir., 15 F.2d 518, cert. denied 273 U.S. 749, 47 S.Ct. 458, 71 L.Ed. 872.

 The appellants assert that the lands in question have great potential as oil-producing lands. We consider this to be irrelevant. The question of value relates to agricultural value in keeping with the intent of the Allotment Act to provide, in effect, a homestead which would sustain an Indian family. The Secretary has so construed the purpose of the Act. John E. Balmer, 71 I.D. 66 (1964).

 We find no error in the administrative process nor abuse of discretion by the Secretary in determining that the lands were unsuitable.

The judgment of the District Court is affirmed.

---

2. If there has been an actual good faith settlement and an attempt is being made to eke an existence from the land by agricultural pursuits, then there is more than ample justification for a regulation which prevents the Indian family from being uprooted and forced from its occupancy. This is not the case before the court.