724 F.Supp. 350 (1989)
UNITED STATES of America
v.
Francis Joseph BATKA, John B. Hires.
Crim. Nos. 89-00187-02, 89-00187-03.
United States District Court, E.D. Pennsylvania.
October 2, 1989.
*351 Linda Dale Hoffa, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.
Frank J. Marcone, Springfield, Pa., for Hires.
Robin G. Marks, Moorestown, N.J., for Batka.

MEMORANDUM AND ORDER
DITTER, District Judge.
Defendants were convicted of mail fraud and of the interstate transportation of a fraudulent instrument. They now move for judgment of acquittal pursuant to Fed. R.Crim.P. 29(c). In view of the fact that in support of their motion defendants claim that there were trial errors, their motion will also be considered as a motion for a new trial under Fed.R.Crim.P. 33. Being convinced that the government's evidence was sufficient to establish defendants' guilt beyond a reasonable doubt and that there were no trial errors, I must refuse the motion.
The charges against the defendants grew out of a claim made to the Consolidated Rail Corporation (Conrail) for injuries suffered by defendant, John Hires, in April, 1984, allegedly as the result of negligence on the part of a Conrail work crew. The indictment charged that Hires and his co-defendant, Francis Joseph Batka, entered into an arrangement with Harry Capozzoli, a Conrail claims agent, to inflate Hires' claim and to defraud Conrail by misrepresentations as to the value of the claim. Capozzoli hoped that after the claim was paid, Batka and Hires would reward him by giving him part of Conrail's payment.
Defendants first contend that an essential element of the government's case was proof that any fraud on their part caused loss to Conrail  that is, the government was required to show had it not been for the fraud, Conrail would have made no payment or payment in some lesser amount to Hires. They also aver that I was required to instruct the jury to acquit the defendants unless Conrail had suffered such loss. The law, however, is to the contrary. The government is not required to show that a mail fraud scheme was successful, that anyone profited from it, or that a defendant got any money as the result of the scheme. United States v. Hopkins, 716 F.2d 739 (10th Cir.1982) (actual defrauding of victim not crucial to successful prosecution).
Defendants next assert that I erred in refusing to permit their cross-examination of Capozzoli regarding other fraudulent practices in Conrail's claims department. I permitted Capozzoli to be cross-examined about other fraudulent schemes in which he may have participated because those actions went to his credibility. However, his surmises, opinions, or even knowledge about frauds perpetrated by other Conrail employees were quite irrelevant to the issues in this case and therefore properly excluded.
The defendants maintain that prior to trial I should have required Capozzoli to undergo a psychiatric examination to determine whether or not he could be a competent witness. That matter was fully considered. Capozzoli had been indicted with Batka and Hires and shortly before their trial began, he entered a plea of guilty. There was an extensive colloquy during which I learned of the severe depression he had undergone between the time of the alleged offenses and the present and of his present claustrophobia. Before the trial of Batka and Hires started and in response to their petition, I heard additional evidence about Capozzoli's mental illness. Based on these hearings during which I observed Capozzoli for more than three hours and my examination of medical records and other *352 documents, I concluded that in 1984 and 1985 he had the ability to observe matters in general, understand what people said to him, and to answer their questions appropriately. I also concluded that at the present time he has the ability to recall and relate those events and that he understands the significance of the oath and the significance of his duty to tell the truth. See United States v. Gutman, 725 F.2d 417, 420 (7th Cir.1984). Finally, I concluded that a psychiatric examination would not be helpful, much less that it was required.
Next, the defendants contend that I limited their inquiry concerning considerations given to settlement of claims and the financial status of Conrail when Hires' claim was resolved. John E. Dalrymple, Conrail's chief claims agent at the time, was a government witness. He was extensively cross-examined about how claims are handled in general, the factors that are considered when a claim is evaluated, the role of the claims agent, and the role of his supervisor. He was also cross-examined with particularity concerning how Hires' claim was handled with specific reference to the file and the documents in the file. Obviously, the issue of Conrail's financial status would have no bearing on whether the defendants were guilty of mail fraud.
Counsel next suggest that I erred in concluding there was evidence of a conspiracy which would permit the admission of "Bruton" statements. Capozzoli testified at length about his conversations and agreements with the defendants concerning inflating the value of Hires' claim. There was ample evidence from him, and from Audrey Zelnick, to establish the existence of a conspiracy. The statements that were received were made during its course and in furtherance of that conspiracy. If the defendants are suggesting that because there was no conspiracy count that a co-conspirator's statement cannot be received, they are in error. Any statements that were subject to a "Bruton" challenge, were appropriately redacted.
One of the government's witnesses was Alice Stambro. The defendants contend that she should not have been permitted to testify because there was inadequate notice prior to the trial that she would be called. However, the defendants knew who she was, knew that they had claimed she was a witness to Hires' accident, and knew that her name was in the Conrail claim file. In addition, prior to trial and thus in advance of the requirement of the Jencks Act, 18 U.S.C. § 3500, defense counsel were furnished with a copy of Ms. Stambro's statement. There has been no showing of any prejudice to the defendants because they did not get even more notice that she would be a witness.
Defendants' next argument is that the government did not produce evidence as to why Hires' claim was settled for $34,000 and thus the jury was required to speculate that there may have been fraud in the determination of that figure. Apparently, the defendants forget the extensive cross-examination of Dalrymple and the testimony of Capozzoli. If the jury believed Capozzoli, and it apparently did, it was clear that there were lies, misrepresentations, deception, and false documents placed in the Conrail file on Hires. Other witnesses testified as to the falsity of some of the documents in the file. There was no need for the jury to guess or speculate about the existence of fraud.
Finally, defendants contend that I argued with one defense counsel in the presence of the jury and interrupted his questions. No specific references to the record are made and I can only observe that a federal judge is not required merely to grace the proceedings with his presence as would the proverbial potted palm tree.
The purpose of a Rule 29 motion is to challenge the sufficiency of the government's evidence. With regard to the mail fraud charges, there were three things that the government had to establish beyond a reasonable doubt:
1. The existence of the scheme to defraud Conrail described in the bill of indictment;
2. The use of the mails in furtherance of that scheme; and
*353 3. The defendants wilfully participated in the scheme with knowledge of its fraudulent nature.
So far as the charge of interstate transportation of a fraudulent instrument was concerned, there were three essential elements the government had to establish beyond a reasonable doubt:
1. The fraudulent scheme to defraud Conrail that was described in the bill of indictment;
2. As the result of this scheme, there was transported from New Jersey to Pennsylvania a check having a value of more than $5000; and
3. The defendants wilfully participated in the scheme with knowledge of its fraudulent nature.
As to both charges, there was overwhelming evidence, if believed by the jury to establish the necessary proof. From the jury's verdict, it is obvious that it accepted the essence of the government's case.